UNITED STATES of America,
Plaintiff–Appellee,

v.

Ezequiel C. GUITERREZ and Eliseo M. Ontiveros, Defendants–Appellants.

Nos. 95–1829, 95–2250.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1996.

Decided Aug. 5, 1996.

Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, Jonathan King (argued), Chicago, IL, for U.S. in No. 95–1829.

Barry Rand Elden, Chief of Appeals, Office of United States Attorney, Criminal Appellate Division, Chicago, IL, Duane J. Deskins (argued), Chicago, IL, for U.S. in No. 95–2250.

Joseph R. Lopez (argued), Chicago, IL, for Ezequiel C. Guiterrez in No. 95–1829.

David C. Thomas (argued), Chicago–Kent College of Law, Chicago, IL, Tony Chavez, Odessa, TX, for Eliseo M. Ontiveros in No. 95–2250.

**470**

Before BAUER, KANNE, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

On July 29, 1994, FBI agents executed a search warrant at Cal's Truck Rebuilders, an office and truck yard on Chicago's South Side. The agents entered the premises with guns drawn, and before conducting the search, handcuffed the seven individuals present and ordered them to lean against a nearby wall. Among the detainees were Ezequiel Ceniceros Guiterrez ("Ceniceros") and Eliseo Miguel Ontiveros ("Ontiveros"). With the premises secured, the agents proceeded to search the area. While other agents conducted the search, Special Agents Andre Zavala and James Cherry interviewed the detainees. At the time the two agents interviewed Ceniceros, he had in his pocket keys to the yard's gate and to one of the parked trucks in the lot. In the course of the interview, Ceniceros handed the keys to Agent Zavala.

The remaining agents subsequently detected narcotics in one of the parked trucks, and upon searching the truck, discovered over 1,000 kilograms of cocaine. The cocaine turned out to be one shipment of a much larger drug trafficking ring. Under the leadership of Jessie Ontiveros, Miguel's father, the conspiracy had been leasing trucks since at least December 1993 to store and distribute large amounts of cocaine throughout the Chicago metropolitan area. Conspirators stored the trucks, and the cocaine, at Cal's Truck Rebuilders.

Ceniceros and Ontiveros were arrested and subsequently indicted on charges of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). A jury convicted Ceniceros and he received a sentence of 200 months imprisonment, followed by 10 years supervised release and an order to report to the INS for deportation upon his release from prison. Ontiveros entered a conditional plea of guilty, and the district court sentenced him to 210 months imprisonment, 10 years of supervised release, and a $15,000 fine. The sole issue Ceniceros raises on appeal is that the district court erred in denying his motion to suppress. Ontiveros challenges only his sentence, contending that he was merely a minor participant in the conspiracy and that the district court erred in determining that Ontiveros committed perjury at the suppression hearing. We affirm.

*Ezequiel Ceniceros Guiterrez*

When the dozen FBI agents entered the premises at approximately 2:10 p.m., they handcuffed Ceniceros along with several other individuals in a corner of the building. Initial questioning focused on determining the detainees' identities, but Ceniceros' statements provided additional incriminating information connecting him to the cocaine conspiracy. A half hour later, Agent Zavala read Ceniceros his *Miranda* rights and presented him with an Advice of Rights form. The form was written in Spanish, and Agent Zavala read and explained the form to Ceniceros before asking him to sign it.

Ceniceros read the form, and with Agents Zavala and Cherry as witnesses, signed it and agreed to speak to the agents. At no point did Ceniceros request an attorney, and at no point did he express a desire to exercise his right to remain silent. Nevertheless, Ceniceros now argues that the totality of the circumstances surrounding the consent—namely the handcuffs, the weapons, and the subjective fear of being arrested—made his consent involuntary.

Ceniceros moved before trial to suppress the cocaine seized during the raid and certain statements he made that afternoon. Ceniceros claims that the district court should have suppressed the cocaine and three types of statements: first, statements that he made *before* receiving his *Miranda* rights because of unlawful interrogation; second, statements he made *after* signing the Advice of Rights form because his consent was involuntary;[1] and third, the nonverbal "statement" of giv-

---

1. The second set of statements that Ceniceros wishes to suppress is in fact a non-issue because the government did not present any of Ceniceros' post-*Miranda* statements at trial.

ing the keys to Special Agent Zavala because this act also was involuntary.[2]

■ At the time of oral argument, the standard of review governing appeals of motions to suppress was in dispute in this Circuit. Since then, the Supreme Court resolved this dispute, and we now review the ultimate questions of reasonable suspicion to stop and probable cause to search *de novo. Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *United States v. Hunter,* 86 F.3d 679, 681 (7th Cir.1996). However, we review findings of historical fact only for clear error, and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. *Id.*

■ Prior to reading anyone his or her *Miranda* rights, the FBI agents handcuffed and detained the people present at Cal's Truck Rebuilders. There is no question that at some point during this detention, the agents placed Ceniceros and Ontiveros under arrest. Prior to or after arresting a suspect, law enforcement officers may ask preliminary questions as to identity, but they may not conduct a custodial interrogation. *See Michigan v. Summers,* 452 U.S. 692, 705–06, 101 S.Ct. 2587, 2595–96, 69 L.Ed.2d 340 (1981); *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). The Advice of Rights form that Ceniceros signed indicates that he was arrested at 2:40 p.m. Therefore, any substantive interrogation before that point would have been inappropriate. According to the district court's findings of fact, Agent Zavala asked Ceniceros the identity of the people in the room with him. Ceniceros' answers, however, provided more information than mere identification. For example, Ceniceros elaborated on the length and scope of his relationship with some of the other conspirators. Ceniceros' descriptions were ultimately incriminating, but his statements were not attributable to unlawful interrogation.

■ Ceniceros next contends that relinquishing the keys to Agent Zavala constituted an involuntary consent to search the truck. He argues that the district court should have suppressed testimony about the connection between the keys to the truck and the cocaine found in the truck because the anxiety of the situation made "voluntary" consent impossible.

■ When determining voluntariness of consent, the district court must look to the "totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). The fact that an officer is armed does not vitiate consent. *See, e.g., United States v. Lechuga,* 925 F.2d 1035, 1042 (7th Cir.1991); *United States v. Jackson,* 901 F.2d 83, 84 (7th Cir. 1990). Moreover, while we understand that the circumstances at the truck yard—law enforcement officers brandishing weapons, handcuffing Ceniceros, and ordering him up against a wall—were "unpleasant, there is nothing so inherently coercive about such tactics ... to render subsequent cooperation involuntary." *United States v. Taylor,* 31 F.3d 459, 464 (7th Cir.1994); *see also United States v. Kozinski,* 16 F.3d 795, 810 (7th Cir.1994). Testifying on his own behalf at the suppression hearing, Ceniceros admitted that the agents read him the Advice of Rights form in Spanish and that he read the form himself before signing it. He also admitted that he understood his rights, and that he had no reason to refuse to sign the statement. Furthermore, the district court found that although Ceniceros was handcuffed throughout the time he made the statements, he was never physically assaulted or abused in any way. Absent any basis for his claim of coercion, we hold that the implied consent Ceniceros gave by handing over the keys was indeed voluntary. *See United States v. Baker,* 78 F.3d 1241, 1244–45 (7th Cir.1996).

*Eliseo Miguel Ontiveros*

■ Testimony at the suppression hearing also has an effect on Ontiveros' appeal, because the district court enhanced Ontiveros' offense level by two points for obstructing justice by giving perjured testimony at the

---

**2.** There is no dispute about whether the agents had probable cause to search the truck. Candelario Baiza, one of the conspirators and the owner of Cal's Truck Rebuilders, gave the agents consent to search the entire premises, including the truck with the 1,000 kilograms of cocaine.

suppression hearing. *See* U.S.S.G. § 3C1.1. Despite the contrary testimony of Ceniceros and Agent Zavala, the time entered on a signed waiver form, and his own affidavit filed in support of the motion to suppress, Ontiveros testified at the suppression hearing that he was not advised of his *Miranda* rights prior to making statements to the FBI agents. The district court found this testimony to be purposefully misleading, especially since Ontiveros omitted this fact from his own affidavit.

A finding of perjury by a testifying defendant will support an obstruction of justice enhancement under § 3C1.1. *United States v. Dunnigan,* 507 U.S. 87, 90, 113 S.Ct. 1111, 1114, 122 L.Ed.2d 445 (1993); *United States v. Mounts,* 35 F.3d 1208, 1219 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995). We review the district court's determination that Ontiveros obstructed justice for clear error. *Mounts,* 35 F.3d at 1219. According to Ontiveros' testimony at the suppression hearing, the FBI agents overlooked him, and only read him his rights much later after the cocaine had been found. Despite this testimony, however, the time recorded on Ontiveros' Advice of Rights form is 2:40 p.m. To believe Ontiveros, we would have to discredit the testimony of several FBI agents as well as the Advice of Rights form that Ontiveros signed. After viewing the respective witnesses and hearing the testimony, the district court found Ontiveros to be purposefully misleading. We defer to that finding.

Ontiveros next argues that the district court erred in its refusal to adjust his offense level because he played only a minor role in the conspiracy. If awarded, this would have produced a two level reduction for Ontiveros. *See* U.S.S.G. § 3B1.2(b). We review the district court's determination of a defendant's role in an offense for clear error. *United States v. Randy,* 81 F.3d 65, 68 (7th Cir.1996).

Application Note 3 to U.S.S.G. § 3B1.2(b) describes a minor participant as one who is "less culpable than most other participants." Ontiveros seizes upon this reference to relative culpability to argue that if Ceniceros was only a minor participant then he too should have received a two level reduction. Ceniceros, who did receive a minor role reduction, was present the entire time that the cocaine was loaded and unloaded, and obtained telephones and vehicles to assist in transporting the cocaine. Ceniceros also possessed the keys to the truck in which the cocaine was found. However, the extent of Ceniceros' involvement in the drug trafficking ring does not minimize Ontiveros' contributions to the conspiracy. Ontiveros travelled to arrange the transportation of the cocaine and stored proceeds from various drug sales. Candelario Baiza met with Ontiveros on at least twenty occasions to discuss the logistics of the cocaine shipments. Moreover, Ontiveros was the conspirator who negotiated the terms of the various drug transactions. Ontiveros was one of the few conspirators who speaks fluent English, which also enhanced his role within the enterprise.

Ceniceros may have had greater physical contact with the cocaine, rented trucks, cellular phones, and other instrumentalities of the drug trade, but these facts are perfectly consistent with the district court's characterization of Ceniceros as the courier or "mule" in the conspiracy. Ontiveros, by contrast, operated at a higher level within the criminal organization. The district court's finding that this leadership position disqualified Ontiveros from the two level reduction for minor participants was not clearly erroneous.

### Conclusion

For the foregoing reasons, the denial of Ceniceros' motion to suppress, and Ontiveros' sentence are

AFFIRMED.