# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3558

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOEL VILLEGAS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 CR 885—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED DECEMBER 12, 2003—DECIDED NOVEMBER 4, 2004

———————

Before COFFEY, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In November 2001, a grand jury
returned a two-count indictment against Joel Villegas; the
indictment charged Mr. Villegas with one count of pos-
sessing with intent to distribute cocaine in violation of 21
U.S.C. § 841(a) and with one count of carrying a firearm in
relation to a drug trafficking offense in violation of 18 U.S.C.
§ 924(c). Mr. Villegas moved to suppress the evidence on
which the indictment was based. After the district court
denied the motion without an evidentiary hearing, Mr.
Villegas entered an unconditional plea of guilty on both

counts and was sentenced to 180 months' imprisonment. Mr. Villegas now challenges aspects of his guilty plea and his sentence. We affirm.

# I

# BACKGROUND

## A. Facts

On October 19, 2001, agents from the Drug Enforcement Administration ("DEA") went to Mr. Villegas' apartment to question him about possible involvement in drug trafficking. The agents did not possess a warrant to search the premises or a warrant for Mr. Villegas' arrest. When the agents approached the door of the apartment, they knocked and identified themselves as police officers. Mr. Villegas opened the door. One of the officers asked Mr. Villegas if they could speak with him. According to the officers, Mr. Villegas agreed to do so.[1] At this point, the parties' version of events diverge.

### 1. Events According to Mr. Villegas

The following events are set forth in Mr. Villegas' affidavit in support of his motion to suppress. Mr. Villegas related that the agents entered his apartment "without invitation."

---

[1] Mr. Villegas' affidavit in support of his motion to suppress is silent with respect to whether (and how) the officers identified themselves and communicated their desire to speak with Mr. Villegas. Mr. Villegas offers no conflicting version of events; his only statement concerns the officers' physical entry into the apartment, which, he states, was "without invitation." Mr. Villegas also states later in his affidavit that he never gave the officers oral permission to search the premises; again, the record is silent concerning whether he agreed to speak with the officers.

R.18, ¶ 2. Upon entering the apartment, one of the agents "began to conduct a search of the premises" and another "began to attempt to converse with the defendant, while another stood close by." *Id.* ¶ 3. The agent who was speaking to Mr. Villegas first attempted to communicate in English and then in Spanish. According to Mr. Villegas, "[t]he Spanish portion of the conversation was very limited, and not understood by the defendant. The defendant did not understand the English portion of the conversation." *Id.* ¶ 4. One of the agents then

> presented a document to the defendant and directed the defendant to place his name on the document, in the space the agent directed him to. This document was a consent to search form. The defendant did not read the document, nor was it read to him, prior to its execution. The defendant placed a signature on the document because he was directed to do so by the law enforcement agent. The defendant did not knowingly and voluntarily consent to the search of the residence. The defendant singed [sic] the document because the armed law enforcement agent directed him to do so.

*Id.* ¶ 6. The consent-to-search form provided to Mr. Villegas was in Spanish; the English equivalent of the form provided to Mr. Villegas is titled "CONSENT TO SEARCH" and states:

1. I HAVE BEEN ASKED TO PERMIT SPECIAL AGENTS OF THE DRUG ENFORCEMENT AD-MINISTRATION TO SEARCH: (Describe the person, place or things to be searched.)

2. I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY.

    3.   I FREELY CONSENT TO THIS SEARCH.

R.25.[2] Mr. Villegas signed this consent form "Pedro Vargas."


### 2. Events According to the DEA Agents

The officers' version of events differs in some respects from that of Mr. Villegas. After securing Mr. Villegas' agreement to speak with them, the officers entered Mr. Villegas' apartment. One of the agents then "inquired if there were any illegal narcotics or guns or money or anything in the house." R.18, App. (Transcript of Proceedings Oct. 25, 2001) at 5. Mr. Villegas responded that there were not. Another agent then asked in Spanish if they could search the house "to make sure that none of that was present in the house." *Id.* Mr. Villegas responded that they "could look around the apartment." *Id.* at 6. At that time, Mr. Villegas also signed a consent-to-search form written in Spanish. The officers then conducted a search of the apartment. Among the items the officers discovered was a pay stub with the name "Joel Villegas" on it. An officer asked Mr. Villegas if the name on the stub was his real name, and Mr. Villegas responded that it was. Then, in Mr. Villegas' presence, one of the agents copied the information from the original consent-to-search form onto a new form. An officer then told Mr. Villegas that the new form was the same as the old and instructed Mr. Villegas to sign his correct name to this new form, which Mr. Villegas did.

During the course of the search, the officers also uncovered nine kilograms of cocaine hidden in a television in the back bedroom, approximately twenty thousand dollars in

---

[2]   Mr. Villegas does not maintain that he does not read and understand the Spanish language.

cash and a loaded handgun. Based on the evidence found in the apartment, the agents placed Mr. Villegas under arrest and transported him to the DEA's Chicago field office.

### 3. Events Subsequent to Mr. Villegas' Arrest

Upon arrival at the DEA office, Mr. Villegas was given his *Miranda* warnings and signed a written waiver (in Spanish) of his rights. The officers then interviewed Mr. Villegas concerning the search at his apartment. The agents asked Mr. Villegas if he understood the consent forms he had signed. According to the investigation report, Mr. Villegas indicated that he understood and that he was asked to sign a second form because he had used a "made-up" name on the first. R.22, Ex.4 ¶ 2. Mr. Villegas also admitted to possessing and concealing the cocaine that had been found in his apartment.

## B. District Court Proceedings

A jury returned a two-count indictment against Mr. Villegas; the indictment charged Mr. Villegas with possession with intent to distribute over five kilograms of cocaine, in violation of 21 U.S.C. § 841(a), and with possession of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924. Mr. Villegas initially entered a plea of not guilty and, through counsel, moved to suppress the evidence obtained during the search of his apartment. Mr. Villegas also requested an evidentiary hearing on his motion.

The district court denied Mr. Villegas' request for a hearing and denied the motion to suppress. In its order disposing of the motion, the court first recounted the facts as set forth by Mr. Villegas in his affidavit. The district court then reviewed the law concerning a consent to search:

Under well-settled law, a warrantless search violates the Fourth Amendment unless certain exceptions are established, among them, consent. *See United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001). In determining consent to search, the court is to consider the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973) ("Voluntariness is a question of fact to be determined from all the circumstances"). The prosecutor "must demonstrate that the subject's knowledge of a right to refuse consent is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* at 248-49. Consent may be implied from conduct as well as verbally. *See United States v. Guiterrez*, 92 F.3d 468, 471 (7th Cir. 1996) (defendant impliedly consented to search of truck when handed over the keys).

R.26 at 2.

The court then noted that Mr. Villegas had "not assert[ed] that he did not realize the agents were law enforcement officers or that the agents forced themselves into the apartment, rather he carefully chose[ ] the words 'without invitation.' " *Id.* Therefore, the court held,

the attestations of defendant, if taken as true, do not bear indicia of coercion or duress. Even if the defendant did not understand he was being asked for consent to search—a proposition on the face of the record highly improbable—defendant was in a position to observe what was happening and did nothing to assert lack of consent.

*Id.* (internal citations omitted). "Thus," concluded the court, "the facts suggest at most that defendant consented because he did not understand that he could say no. But, as indi-

cated above, that is insufficient under [the] law to invalidate the search." *Id.* (citing *Guiterrez*, 92 F.3d at 471). Accordingly, the court denied the motion to suppress and the request for an evidentiary hearing.

After his motion to suppress was denied, Mr. Villegas entered an unconditional plea of guilty on both counts of the indictment. The district court subsequently sentenced him to 180 months' imprisonment, the statutory mandatory minimum for the crimes to which Mr. Villegas pleaded guilty.

## II

## DISCUSSION

On appeal, Mr. Villegas raises three issues, all of which concern the performance of his counsel in the district court. First, Mr. Villegas claims that he received ineffective assistance of counsel because his attorney failed to advise him properly concerning his guilty plea. Second, Mr. Villegas maintains that his counsel was ineffective in failing to cite persuasive authority to the district court with respect to his request for an evidentiary hearing on the motion to suppress. Finally, Mr. Villegas maintains that his counsel was ineffective at sentencing because he failed to request a downward departure based on Mr. Villegas' role in the offense. We consider each of these issues below.

## A.

Mr. Villegas uses the bulk of his brief to set forth the merits of his suppression motion. He claims that if his counsel had cited pertinent authority to the district court, the court would have been persuaded to conduct an evidentiary hear-

ing and to suppress the evidence found in his apartment.

However, as noted by the Government, and admitted by Mr. Villegas, "an unconditional guilty plea waives all non-jurisdictional defects occurring prior to the plea, including Fourth Amendment claims like the one raised here." *United States v. Elizalde-Adame*, 262 F.3d 637, 639 (7th Cir. 2001). Mr. Villegas nevertheless urges this court to look beyond his plea because, he claims, he received constitutionally ineffective assistance of counsel with respect to the entry of his plea.

### 1. Standard for Granting Relief

The Supreme Court has held that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received'" was constitutionally ineffective. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). In *Lockhart*, the Court explained that "the two-part *Strickland v. Washington*[, 466 U.S. 668 (1984),] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. Thus, in order to prove a Sixth Amendment violation in the context of a guilty plea, a defendant first has to establish that his counsel's actions during plea negotiations fell outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Second, a defendant must establish prejudice as a result of his counsel's actions. The Court in *Lockhart* explained:

> The second, or "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial.

*Lockhart*, 474 U.S. at 59. The prejudice element, for purposes of an ineffective assistance claim raised in the context of a guilty plea, often will depend on the performance of counsel at other stages in the proceedings. The Court noted that "the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id.* at 59. The Court gave the following example:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59-60 (citations omitted). With this standard in mind, we turn to Mr. Villegas' ineffective assistance claim.

### 2. Propriety of Considering Ineffective Assistance on Direct Appeal

Before we evaluate the merits of Mr. Villegas' claim, however, we must consider whether Mr. Villegas' ineffective assistance of counsel claims should be resolved on this direct appeal. "[A]ppellate courts generally do not consider claims of ineffective assistance of counsel on direct appeal from guilty pleas. This is because often 'there has been no opportunity to develop and include in the record evidence bearing on the merits of the allegations.' " *United States v.*

*Fisher*, 772 F.2d 371, 373 (7th Cir. 1985) (quoting *United States v. Stephens*, 609 F.2d 230, 234 (5th Cir. 1980) (internal citations omitted)).

The general rule is applicable here. The record on appeal does not contain a transcript of the plea hearing, much less evidence regarding the plea negotiations, the advice Mr. Villegas received during those negotiations or his counsel's decision-making process. It is therefore impossible on the record before us to determine whether counsel's performance was constitutionally sufficient. However, "[e]ven if the record is insufficiently developed, we need not remand to the district court if we determine that the defendant cannot establish that he or she suffered some prejudice." *United States v. Asubonteng*, 895 F.2d 424, 428-29 (7th Cir. 1990). We consider, therefore, the possible prejudice to Mr. Villegas.

As noted above, whether a defendant was prejudiced by the entry of a guilty plea may depend, in large part, on the merits of other legal claims. In *Lockhart*, the Court gave the example of a counsel's failure to discover exculpatory evidence. In that scenario, the court explained,

> the determination whether the error "prejudiced" the defendant . . . will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59. Here, Mr. Villegas' claim is that, had his attorney pursued the suppression motion more vigorously, the motion would have been granted, and he would not have entered an unconditional guilty plea. Thus, the determination of whether Mr. Villegas suffered prejudice as a result of the

entry of an unconditional plea rests in large part on the underlying Fourth Amendment claim.

## B.

Mr. Villegas argues on appeal that his counsel's failure to research adequately the suppression issue resulted in the district court's failure to hold an evidentiary hearing and to grant his motion. The Government contends that, given the undisputed facts that formed the basis of the district court's determination, the district court correctly denied the motion to suppress on the merits.

### 1. Evidentiary Hearing

Mr. Villegas' first claim does not require lengthy discussion. He maintains that his attorney failed to cite appropriate authority to the district court in seeking an evidentiary hearing on the motion to suppress. We have explained that "evidentiary hearings on motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). "Evidentiary hearings are warranted only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Id.* (citations omitted). Furthermore, a "district court [i]s obliged to hold a hearing only if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

Here, in disposing of Mr. Villegas' suppression motion, the court relied upon Mr. Villegas' version of the events sur-

rounding the search and other facts that Mr. Villegas did not contest. *See* R.26 at 2 ("Defendant proffers the following facts . . . ."). The court did not resolve any issues of disputed fact in reaching its decision to deny the motion to suppress. Because the purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes. Consequently, the district court did not commit error in denying the hearing on the motion to suppress.

### 2. Unreasonable Search

Mr. Villegas also claims that the district court erred in failing to grant his motion to suppress on the undisputed facts that were before the court. According to Mr. Villegas, the undisputed facts establish that the agents' initial entry into his apartment was illegal because it was "without invitation." An "explicit verbal consent" or any other form of affirmative invitation to enter a dwelling is not necessary to constitute "consent" for purposes of the Fourth Amendment. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002). "[C]onsent may be manifested in a non-verbal as well as verbal manner . . . ." *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000); *see United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996) ("A person can, however, consent to the entry of their home or hotel by officers, and consent need be neither express or verbal.").

As noted by the district court, this is not a case in which the officers pushed Mr. Villegas aside or otherwise asserted their authority to gain entry to the apartment. The DEA agents knocked on the door and identified themselves as law enforcement officers. Mr. Villegas subsequently opened the door for the officers. The officers asked Mr. Villegas if they could speak with him; they did not threaten Mr. Villegas in

any way or brandish their weapons when making the request. Mr. Villegas assented, and the officers then entered the apartment. There is "nothing in the sequence of events that evidences coercion or duress," *Walls*, 225 F.3d at 863, or any objection by Mr. Villegas to the officers' entry. Under these circumstances, therefore, we believe that Mr. Villegas sufficiently manifested consent for the officers to enter his apartment.[3]

Mr. Villegas also maintains that the ensuing search cannot be justified on the basis of a voluntary consent. The burden is on the Government to prove, by a preponderance of the evidence, "that someone who consents to a search does so freely and voluntarily." *United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir. 1995) (citing *Schneckloth*, 412 U.S. at 222). "We look to the totality of the circumstances to determine whether consent arose from coercion and duress, or from voluntariness." *Id.* Among the relevant factors to consider are:

> (1) the person's age, intelligence, and education, (2)

---

[3] This is not a case, as asserted by Mr. Villegas, controlled by our holding in *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991). In *Berkowitz*, the defendant alleged that the police came to his home and knocked on the door. Berkowitz opened the door, and the police immediately entered the house and arrested Berkowitz. Because "the police . . . enter[ed] a person's home, without his consent, before announcing their authority to arrest," *id.* at 1387, the action of opening the door could not be considered consent for the officers to enter the house and effectuate the arrest.

Here, by contrast, there is no dispute that the agents identified themselves as law enforcement personnel and announced their desire to speak to Mr. Villegas prior to their entry into the apartment.

> whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent.

*United States v. Raibley*, 243 F.3d 1069, 1075-76 (7th Cir. 2001).

Here, there is no evidence of coercion or duress. Mr. Villegas does not allege that the officers' entry and presence in the apartment was anything except peaceable; the DEA agents did not use force to gain entry into the apartment or to maintain their presence. Mr. Villegas was not under arrest when the agents requested permission to search the apartment. Additionally, the agents did not threaten to secure a warrant in the absence of Mr. Villegas' cooperation. *See Saadeh*, 61 F.3d at 518. Nor did the agents use repeated requests to badger Mr. Villegas into consenting to the search. *Raibley*, 243 F.3d at 1076; *see also Pedrozo*, 269 F.3d at 829. Finally, Mr. Villegas was presented the consent-to-search form in Spanish, his first language, and the form explicitly stated that the signer was not "threatened, nor forced in any way" and that he "freely consent[ed]" to the search.[4] Conse-

---

[4] In this case, Mr. Villegas signed two consent-to-search forms in his apartment. Both consents attest that Mr. Villegas had not been "threatened or forced" and that his consent was "freely given." R.22, Exs.1 & 2; R.25. Furthermore, after Mr. Villegas' arrest, he was given his *Miranda* warnings and signed a waiver (in Spanish) of his rights. In his interview with officers that followed, Mr. Villegas stated affirmatively that he understood the forms that he had signed at his apartment. Finally, there was no illegal evidence found prior to the time that the consent-to-search form was signed, nor was there any show of force by the DEA agents

(continued...)

quently, the totality of the circumstances establish that Mr. Villegas' consent to search the apartment was voluntary.[5] Thus, we agree with the district court that, even taking the facts as alleged by Mr. Villegas to be true, his consent to search his apartment was voluntary.

Because the district court committed no error in denying the motion to suppress, Mr. Villegas was not prejudiced in any way by his counsel's failure to present more vigorously

---

[4] (...continued)
present that might undermine the consent.

[5] Mr. Villegas argues that, even if the consent was voluntary, the evidence discovered was the result of the initial illegal entry and, therefore, should be suppressed. As we already have explained, we do not believe that the initial entry was illegal. However, even if we had reached the opposite conclusion, we believe that the items discovered after the search were "sufficiently distinguishable" from the initial entry as to be "purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks omitted). To determine whether evidence is sufficiently distinguishable from the illegality, courts look to three factors: (1) the temporal proximity of the illegal entry and the search; (2) the presence of intervening factors between the two events; and (3) the nature of the official misconduct and the circumstances surrounding that conduct. *See Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). Here, although the search of the apartment occurred shortly after the initial entry, the other two factors suggest that the two events should be considered distinct. "Without doubt, a voluntary consent is a powerful 'intervening factor' that should be weighed in the *Brown* balance . . . ." *United States v. Liss*, 103 F.3d 617, 623 (7th Cir. 1997) (Ripple, J., concurring). Furthermore, if there was official misconduct, it was far from egregious; there are no allegations that the DEA agents used threats or a show of force to enter the premises. *See, e.g., Brown*, 422 U.S. at 605 (considering whether the police conduct was "calculated to cause surprise, fright, or confusion").

his request for an evidentiary hearing or his substantive motion to suppress. Similarly, he has not suffered any prejudice as a result of his unconditional plea, and his Sixth Amendment claim with respect to the proceedings culminating in his plea must fail.

## C.

Mr. Villegas' final argument is that his counsel was constitutionally ineffective when he failed to seek a reduction for Mr. Villegas' minor role in the offense. We find no merit in this argument. Mr. Villegas pleaded guilty to one count of violating § 841(a), possessing with intent to distribute over five kilograms of cocaine. This crime carries a mandatory ten-year sentence. 21 U.S.C. § 841(b). Mr. Villegas also pleaded guilty to using a firearm in relation to a drug trafficking offense in violation of § 924(c), a crime that carries a mandatory minimum sentence of five years, to be served consecutively to the sentence for the underlying crime. 18 U.S.C. § 924(c)(1)(A)(i). The district court sentenced Mr. Villegas to the mandatory minimum length of imprisonment for each crime. Consequently, even if counsel failed in some way with respect to representing Mr. Villegas at sentencing, this failing did not impact Mr. Villegas' sentence.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*