In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3627

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VICTOR A. DEAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 CR 50044-5—**Philip G. Reinhard**, *Judge.*

ARGUED SEPTEMBER 10, 2008—DECIDED DECEMBER 17, 2008

Before COFFEY, RIPPLE, and MANION, *Circuit Judges.*

COFFEY, *Circuit Judge.* On June 7, 2006, Detective Jason Cebuhar, a 12-year veteran of the Rockford, Illinois, police department, received information that Victor Dean had purchased guns that subsequently proved to have been stolen during a burglary Officer Cebuhar was investigating. The detective also determined from the police records that Dean had three outstanding arrest warrants. Cebuhar and several other officers went looking for Dean

at his residence, and shortly after arrival at his home, Cebuhar heard a "crashing sound" from the opposite side of the house and immediately thereafter spotted Dean hiding in the bushes. Dean was arrested and thereafter a search of Dean's house uncovered the weapons as well as heroin. Dean was charged with one count of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1).

At a pretrial suppression hearing, Cebuhar and another officer, Brad Stien, testified that Dean had orally consented to the search that uncovered the firearms; on the other hand Dean testified that he never consented. The trial court judge found the testimony of the officers to be more credible than Dean's and denied Dean's motion to suppress. After the court agreed to Dean's request for a replacement for his attorney, Donald Sullivan, Dean moved to reconsider the motion to suppress because, he claimed, Sullivan's performance had been deficient. After the district court denied the motion to reconsider, Dean entered a conditional guilty plea in order that he might preserve for appeal the district court's ruling on the motion to suppress and the motion to reconsider.

On appeal Dean argues that the district court's credibility findings were an abuse of discretion for the following reasons: (1) according to Dean, Cebuhar and Stien each had a motive to testify falsely about consent because they were employed in the same police department and wanted to ensure that the court would uphold the search, (2) the officers' failure to obtain written consent for the search undermined their credibility, (3) Dean was unlikely to have consented knowing that heroin would be found,

and (4) two purportedly unbiased witnesses supported Dean's contention that he did not break a window during the search contrary to the officers' contention that he did. Dean also argues that the district court's denial of his motion to reconsider was an abuse of discretion for the following reasons: (1) Attorney Sullivan's pro forma written submissions were cursory and ill-prepared, (2) Sullivan failed to vigorously cross-examine Cebuhar's explanation for his not seeking written consent, (3) in arguing the motion, for reasons unexplained, Sullivan did not refer to the officers' failure to obtain written consent nor their motive to lie, and (4) the district court agreed to Dean's request to replace Sullivan. After reviewing the record we disagree with Dean's arguments. The district court did not abuse its discretion when affirming its prior ruling.

At the suppression hearing, Cebuhar testified to the following version of events. After Dean had been apprehended, Cebuhar and Stien walked suspect Dean to a squad car, and Stien asked Dean if anyone else was in the house. Cebuhar then told Dean that he and the other officers "were here for the guns," and Dean replied that the officers could retrieve the guns from the front closet. The keys Cebuhar obtained from Dean did not unlock the house, so another officer entered the residence through the broken window and recovered the weapons. While in custody, Dean cooperated with the officers, and Cebuhar observed a small laceration on one of Dean's legs. On cross-examination, Cebuhar stated that he observed broken glass outside the broken window. Attorney Sullivan also asked Cebuhar why he had not ob-

tained written consent to search for the guns, and Cebuhar replied that Dean had tried to escape, and he had provided specific information about the guns, and furthermore he had given his oral consent to search for them. Cebuhar added that the officers believed that the oral consent given was sufficient and Sullivan did not further probe Cebuhar's explanation for not getting written consent.

Patrol Officer Stien, a six-year veteran of the Rockford, Illinois, police department, testified to the following version of events. As he approached the residence, he heard a disturbance on the west side of the house that he said sounded like either "glass breaking" or a "door opening." As Stien and Cebuhar walked Dean to the squad car after Dean had been apprehended, Stien asked Dean if anyone else was in the house, and Dean replied no. Cebuhar asked Dean about the stolen rifles, and Dean granted the officers permission to retrieve the guns from the front closet. Stien also mentioned that the house had a broken window and that Dean cooperated with him, and also stated that suspect Dean had a cut on one of his legs. Attorney Sullivan cross-examined Stien about the nature of the sound he heard as he approached the residence and also attempted unsuccessfully to get Officer Stien to say that Dean refused to consent to the search.

Detective John Wassner testified that he heard the breaking of glass on the west side of the residence shortly before Dean's apprehension. Wassner further mentioned that, after Cebuhar had informed him that Dean consented to the search, Wassner avoided shards of

glass in an attempt to enter the house through the broken window on the west side of the residence.

Dean called Joseph Taylor, a window repairman who said he had never met Dean. Taylor testified that on the Saturday before the hearing he had inspected Dean's residence and concluded that none of the windows on the west side had recently been broken. A friend of Dean's, Melvin Bradley, testified that he secured Dean's house after his arrest and did not observe any broken window. Finally, Dean testified that he climbed through a window on the west side without breaking it; after he was caught, Dean said, one of the officers said he had come for the guns, but Dean made no response to the officer's statement. On cross-examination Dean maintained that he injured his leg when he fell while running from his residence and not from climbing through a window of broken glass. He agreed that he had cooperated with the police throughout the day of his arrest, acknowledged his multiple felony convictions, and also admitted that at the time of his arrest he knew about the three guns in his closet and the heroin elsewhere in his residence. On redirect examination, Dean mentioned that he had experience with the police and had learned that officers needed permission to search his premises if they did not have a warrant.

In arguing Dean's motion, Sullivan insisted that the officers' testimony was not credible because two witnesses testified that no window in Dean's residence had recently been damaged. Sullivan also contended that Dean, who was familiar with the law of search and seizure,

would have known that the police could not enter his house once he was outside.

The trial judge was unsure whether Dean had broken a window as he left his house, but the court did make a finding that the officers had heard either aluminum crashing or a window breaking and ultimately concluded that the condition of the window did not affect the officers' credibility. As to whether Dean had consented to the search, the court credited the testimony of Officers Cebuhar and Stien; the court reasoned that the two witnesses were experienced officers, their different positions in the police department rendered unlikely a collaborative effort to fabricate a story, and their testimony had appeared to be truthful. In contrast, the court reasoned that Dean's prior felony convictions, his strong incentive to concoct a story, and the injury he sustained on the day of his arrest seemed to undermine his credibility. The court held that the government had satisfied its burden of proof and established that Dean consented to the search.

Following the suppression hearing the district court granted Dean's request for a substitute appointed lawyer because Dean stated that he had lost confidence in Sullivan and irreconcilable communication difficulties persisted between them. Dean then moved for reconsideration of the ruling on his motion to suppress because, Dean argued, he was prejudiced by Sullivan's handling of the matter. The court denied the motion, stating that Sullivan had presented witnesses supporting Dean's version of events. Dean then entered a conditional

guilty plea and was found guilty of possessing the weapons and was sentenced to a term of 120 months' imprisonment.

On appeal Dean argues that the district court's reasoning in support of its finding that he consented to the search is flawed for the following reasons: (1) Cebuhar and Stien had motive to lie about consent because they were employed in the same police department and wanted to ensure that the court would uphold the search, (2) the officers' failure to obtain written consent to search for the guns undermined their credibility, (3) Dean was unlikely to have consented knowing that heroin would also have been found, and (4) two purportedly unbiased witnesses supported Dean's contention that he did not break a window. As to the fourth reason, however, Dean acknowledges that the window's condition does not have a direct connection to the credibility of the officers' contention that he consented to the search.

It is well settled that the government may conduct a warrantless search if verbal consent is given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Renken*, 474 F.3d 984, 986-87 (7th Cir. 2007); *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004). The issue here is one of credibility; the two officers testified that Dean had given oral consent; Dean said he did not. We defer to a district court's credibility findings made during a suppression hearing unless they are clearly erroneous. *United States v. Groves*, 530 F.3d 506, 510 (7th Cir. 2008); *United States v. Bernitt*, 392 F.3d 873, 878 (7th Cir. 2004). Indeed, we will uphold the district court's choice of whom to believe

unless the court credited exceedingly improbable testimony because the trial court is in the best position to make that judgment. *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004); *United States v. Thornton*, 197 F.3d 241, 247 (7th Cir. 1999). As we have said, "[w]e do not second-guess the sentencing judge's credibility determinations because he or she has had the best opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Woods*, 233 F.3d 482, 484 (7th Cir. 2000) (internal quotation marks omitted).

In this case the district court credited the two officers for many reasons: (1) they were experienced officers from different divisions and would thus be less likely to collaborate and fabricate a story, and (2) they had appeared to testify truthfully. And, indeed, the record provides no evidence that they had testified untruthfully at any time before the hearing. In contrast, the court reasoned that Dean's prior felony convictions, his strong incentive to concoct a story, and his leg injury undermined his credibility. Altogether, it was perfectly rational for the district court to have believed that Dean's desire to avoid another conviction provided a greater motive for him to fabricate a story than any motive that could be attributed to the officers. *See United States v. Bass*, 325 F.3d 847, 849-50 (7th Cir. 2003) (upholding district court's finding that officer's testimony was more credible than a felon's). The rest of Dean's arguments fail because none of them

rises to the level of making the officers' story exceedingly improbable. Cebuhar's explanation that Dean's oral consent in front of two officers rendered written consent unnecessary, and that the expedient nature of the situation rendered it inconvenient, supports the conclusion that the absence of written consent did not substantially undermine the officers' credibility. Written consent, of course, is not constitutionally required. *See Villegas*, 388 F.3d at 324; *United States v. Price*, 54 F.3d 342, 346-47 (7th Cir. 1995). Dean's cooperative disposition at the time of his arrest suggests that he believed it was better to allow the police to retrieve the guns, even though he was well aware that guns and drugs were within the house. Finally, although Dean did present two witnesses who testified that there was no broken window at his house, even he concedes that the exact condition of the windows was at most peripheral to the question of consent.

Dean also argues that the district court abused its discretion when it ruled that Dean had failed to present facts, case law, and reasoning substantial enough to warrant the granting of the motion to reconsider. Dean argues that Sullivan's performance was deficient for the following reasons: (1) Sullivan's pro forma written submissions were cursory and ill-prepared, (2) Sullivan failed to vigorously cross-examine Cebuhar's explanation for not seeking written consent, (3) in arguing the motion, Sullivan did not refer to the officers' failure to obtain written consent or their motive to lie, and (4) the district court agreed to Dean's request to replace Sullivan. Dean also contends that Sullivan's allegedly deficient performance prejudiced him because he pleaded guilty only as a result of counsel's failure to win the motion to suppress.

Dean's argument fails because he points to no short-coming in Sullivan's presentation that could have changed the outcome. The suppression hearing turned on the question of a credibility judgment. Motions to suppress need not be elaborate or even written, and Dean has failed to demonstrate that a longer written submission might have altered the district court's credibility finding because that issue was resolved at the hearing after extensive testimony. *See United States v. Banks*, 405 F.3d 559, 568 (7th Cir. 2005); *Johnson v. Norris*, No. 07-3058, 2008 WL 3166152, at *6 (8th Cir. Aug. 8, 2008). Nor does Dean explain how a more-vigorous challenge to Cebuhar's explanation for not obtaining written consent to search would have altered the district court's finding. Sullivan asked Cebuhar about his failure to obtain written consent, and the district court heard Cebuhar's explanation. The court received all of the information it needed to determine the plausibility of his testimony. Similarly it is unlikely that the district court needed an explicit reminder during arguments that written consent would have bolstered Cebuhar's credibility or that the officers had a motive to lie and in fact did prevaricate. Finally, Dean's difficulty getting along with Sullivan and his preference for substitute counsel does not reflect on Sullivan's performance. *See United States v. Huston*, 280 F.3d 1164, 1168 (7th Cir. 2002).

We uphold the denial of Dean's motion to suppress and AFFIRM his conviction.