UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2006
Decided May 4, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-2976

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>COLLINS R. HARRIS,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 04 CR 194<br><br>John Daniel Tinder,<br>*Judge*. |

**O R D E R**

Collins Harris was caught with two 9-millimeter bullets after police stopped him at a location where gunshots were reportedly fired. He later pleaded guilty to possession of ammunition by a felon, 18 U.S.C. § 922(g)(1), but preserved his right to challenge the district court's denial of his motion to suppress the bullets. We affirm.

Police received a call shortly after noon on October 8, 2004, reporting that one or more gunshots had been fired in the vicinity of 2005 North Moreland Street in Indianapolis. Officer Carlos Trincado—the government's sole witness at the hearing on Harris's suppression motion—testified that the police dispatcher who relayed the report described the suspect as a black man wearing blue jeans and a red T-shirt. Trincado arrived at the address and witnessed a black man in blue

jeans but no shirt "coming from the residence of 2005 North Moreland Street." The man—Harris—was alone on the property. Trincado watched Harris leave the porch of 2005 North Moreland and walk toward the sidewalk, and then engaged him in conversation. Trincado testified that Harris "avoided direct eye contact," "was agitated," and "was moving around." Harris reportedly told Trincado that he had not heard the shots. Harris was still very agitated, according to Trincado, and the officer proceeded to conduct a pat-down search, during which he detected what he recognized as bullets in Harris's pant's pocket.

Harris called Officer Wellman to testify at the suppression hearing, in an attempt to impeach Officer Trincado. Wellman testified that he arrived at the scene after Harris was in custody and assisted Trincado by reading Harris the *Miranda* warnings and completing a written report of the incident. Wellman's "initial inference" after speaking with Trincado was that Trincado saw Harris "come from between the houses on the north side of 2005 Moreland and walk toward the front door," rather than come from the porch of the house, as Trincado testified. He agreed with defense counsel, after refreshing his memory, that Trincado also stated that Harris "knocked on the front door of the house when he went up to the porch." Wellman had the opportunity to witness Harris's demeanor, which he described as "very agitated, very uncomfortable."

Harris argued in the district court that Officer Trincado acted unreasonably at each of three critical points leading to the discovery of the bullets. First, he argued that Trincado lacked reasonable suspicion to make the initial stop because he did not match the description of the suspect (he was found without a shirt, as opposed to a red shirt). Next, he asserted that Trincado lacked reasonable suspicion that he was armed (necessary for the frisk following the stop). Finally, he suggested that Trincado exceeded the scope of a reasonable pat-down search because the bullets could not have been detected by simply frisking him.

The district court rejected Harris's arguments. The court found that Harris's appearance and his proximity to 2005 North Moreland where shots were reportedly fired "would give substantial suspicion to any reasonable police officer." The court added that Harris's lack of a shirt only added to the level of suspicion. Next, the court concluded that Harris's "agitated movements" and the report of gunshots being fired justified the pat-down search. Finally, the court found that Officer Trincado did not manipulate the bullets during the pat-down search but rather had sufficient law enforcement experience to explain his ability to detect them.

On appeal, Harris concedes that Officer Trincado had reasonable suspicion for the initial stop. He also abandons the argument that Trincado could not have known from frisking him that the objects in his pocket were bullets. Harris's lone

remaining argument is that Trincado lacked reasonable suspicion that he was armed and dangerous.

We review questions of law related to a suppression motion de novo and findings of fact for clear error. *See United States v. Martin*, 422 F.3d 597, 601 (7th Cir. 2005). A pat-down search is permissible under the Fourth Amendment if, under the totality of the circumstances of the encounter, a reasonably prudent person would have feared for his safety or that of others. *United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003) (citation omitted); *see Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).

Officer Trincado had reasonable suspicion to conduct the pat-down search of Harris. Harris generally matched the description of the suspect, supporting Trincado's fear that he might be armed because the suspect reportedly discharged a gun in the same location. *See United States v. Mitchell*, 256 F.3d 734, 738 (7th Cir. 2001) (report of shots fired one factor justifying officer's reasonable suspicion that suspect was armed); *see also United States v. Sims*, 296 F.3d 284, 287 (4th Cir. 2002) (pat-down justified where suspect acted furtively, "matched the tipster's description, was the only person about, and was a very short distance from the spot where a shot was reportedly fired just a few minutes before"); *United States v. Davis*, 235 F.3d 584, 588 (D.C. Cir. 2000) (police had reasonable suspicion to believe individual who matched "sex, race, clothing, and location" of suspected shooter was armed); *United States v. Raino*, 980 F.2d 1148, 1150 (8th Cir. 1992). Trincado responded to 2005 North Moreland "probably a minute" after receiving the report that shots were fired, increasing the likelihood that Harris would still be armed if he were the shooter. *See Mitchell*, 256 F.3d at 738 (quick response of officers one factor justifying belief that individual suspected of discharging gun continued to be armed); *Sims*, 296 F.3d at 287 (same). Finally, Harris's agitated state and his avoidance of eye contact were also factors that appropriately increased Trincado's level of suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999) ("Nervousness or refusal to make eye contact alone will not justify a *Terry* stop and pat-down . . . , but such behavior may be considered as a factor in the totality of circumstances."). Under these circumstances, Trincado's frisk of Harris was justified.

We note that the "mere presence" cases that Harris relies on are easily distinguished on their facts. In *Yberra v. Illinois*, 444 U.S. 85 (1980), the Supreme Court held unconstitutional a pat-down of a tavern patron that police conducted simply because he was a customer at the scene at the time they executed a search warrant (the police had probable cause to believe the bartender was selling heroin, but the warrant did not mention the tavern's patrons). *Id*. at 90-91. Similarly, in *United States v. Johnson,* 170 F.3d 708, 719 (7th Cir. 1999), this court upheld the

suppression of evidence discovered during a pat-down of an individual who emerged from an apartment where the police suspected illegal drug activity was occurring. Finally, in *United States v. Gray*, 213 F.3d 998 (8th Cir. 2000), the Eighth Circuit held that presence in a high-crime area is by itself insufficient to establish reasonable suspicion of criminal activity. Here, in contrast, Officer Trincado did not simply find Harris at the scene of a suspected crime. Harris's agitated behavior was suspicious, he matched the general description of the suspect, and the officer was responding to a dispatch of "shots fired" at the location only minutes earlier. The totality of the circumstances supported Trincado's reasonable suspicion that Harris was armed, even if his mere presence at 2005 North Moreland would not.

AFFIRMED.