# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-3496

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WALTER H. MARTIN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 03 CR 17—**Richard L. Young**, *Judge.*

_____

ARGUED JULY 6, 2005—DECIDED SEPTEMBER 7, 2005

_____

Before COFFEY, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Walter Martin was convicted after a jury trial of possession with intent to distribute over 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). He challenges the district court's denial, without an evidentiary hearing, of his motion to suppress narcotics seized from his vehicle during a traffic stop. Because the stop was predicated on probable cause, and was not unreasonably prolonged, we affirm the district court's decision to deny Mr. Martin's suppression motion.

# I

# BACKGROUND

## A. Facts

At approximately 4:50 a.m. on June 5, 2003, Indiana State Trooper Timothy Wood stopped Mr. Martin for exceeding the speed limit on Highway 41 in Gibson County, Indiana. Mr. Martin was accompanied by a female companion, Tawana Fairley, in the front passenger seat, and by two children, one aged approximately eight years and the other approximately eighteen months old, in the rear seats. A camera mounted on the dashboard in Trooper Wood's cruiser recorded subsequent events although there is no audio for the majority of the stop.[1]

Trooper Wood requested Mr. Martin's driver's license, and Mr. Martin unsuccessfully searched for it in the vehicle's interior and trunk for several minutes. In the course of Mr. Martin's search, he left the trunk open; it remained open during subsequent events. Trooper Wood then asked Mr. Martin to stop searching for his identification and to sit in the back of the police cruiser. The officer requested Mr. Martin's name, date of birth and address to obtain licensing information "for the citation that [the officer] was about to write." R.21, Ex.A at 1. Mr. Martin gave his name and date of birth and told the trooper that he was from Vincennes, Indiana, although Mr. Martin could not remember his zip

---

[1] At trial, Trooper Wood admitted that he turned off the audio at certain times. He testified that he did so because the microphone was on his person, and, if the audio was on, an individual in the back seat of the cruiser could hear conversations that Trooper Wood had with other officers even though they were conducted outside of the vehicle. The audio remained off through most of the stop because, at times, Trooper Wood forgot to reactivate the microphone.

code. Mr. Martin also stated that he did not have a vehicle registration because his car was a rental, nor did he have the rental agreement.[2] Trooper Wood was unable to verify that Mr. Martin was licensed in Indiana, and Mr. Martin told the officer that he "probably" was licensed in Illinois. *Id.* The trooper verified that Mr. Martin held a valid Illinois driver's license.

Trooper Wood talked to Mr. Martin while he awaited the results of the license checks, although it is unclear from the record whether any part of the relevant conversation occurred after Trooper Wood verified that Mr. Martin validly was licensed in Illinois. The officer revisited some basic questions and discovered uncertainties in Mr. Martin's answers.[3] Mr. Martin stated that his destination was Evansville, Indiana, with his wife and two children who were visiting from Chicago. When Trooper Wood then "asked why they went to Evansville to get a hotel room when [Mr. Martin] lived in Vincennes[,] [h]e advised that they just wanted to get away down in the Evansville area." *Id.* At this

---

[2] At some point, Trooper Wood confirmed that the vehicle was rented by a third party and that Mr. Martin was not authorized to drive it. It is not clear from Trooper Wood's account when he arrived at this information. According to Trooper Hornbrook, however, the rental information was developed between the time he arrived and the time that the pair called the canine unit.

[3] Trooper Wood's report of the incident—the only account before the district court when it heard the suppression motion—states that he identified an inconsistency in Mr. Martin's account: "I asked the subject several questions about where he was coming from. He first stated was [sic] coming from Terre Haute. In the conversation a little while later, I came back with the question again . . . . He said he was coming from Vincennes." R.21, Ex.A at 1.

point, Trooper Wood

> asked [Mr. Martin] several questions about where he had been, where he was going to and where he was coming from and every answer that he gave me was either vague or different from the past question that I asked him. My suspicion started to rise when everything just wasn't fitting together . . . .

*Id.* Acting on his suspicion, Trooper Wood checked Mr. Martin's criminal history and found that "he had been arrested for several different charges." *Id.*

Trooper Wood called Trooper Robert Hornbrook, an Indiana State Police Drug Interdiction Officer, because "it was to my suspicion that we may have something that fit in that category of Trooper HORNBROOK's classification." *Id.* at 2. Although the timing of the call is uncertain, Trooper Hornbrook stated that he arrived approximately fifteen minutes after Mr. Martin was stopped. Trooper Hornbrook told Trooper Wood that he possessed intelligence that Mr. Martin was a drug dealer in Vincennes. Trooper Hornbrook also questioned Fairley, who "was sweating and nervous and was very evasive of my questions," R.21, Ex.B, Hornbrook Supplemental Case Rep. at 1; although she stated that Mr. Martin was taking her to a hospital, she refused when Trooper Hornbrook asked if he should contact an ambulance. In the meantime, Trooper Wood contacted the car rental company, which advised him to have the vehicle towed because Mr. Martin was not an authorized driver.

The troopers called a specially-trained canine unit to sniff the vehicle approximately thirty minutes after Mr. Martin was stopped. Deputy Sheriff Doug Dewig arrived with his dog and conducted a "free air sniff," *id.* at 2, around the vehicle approximately twenty minutes later. The dog alerted to the presence of narcotics in the vehicle. Trooper

Hornbrook and Deputy Dewig removed Fairley and the children from the vehicle and conducted a search. They found a loaded handgun under the front passenger seat together with a package containing "bags . . . commonly used to conceal narcotics." *Id.* Mr. Martin then was arrested, approximately one hour after the stop, for possessing a handgun and for "failure to identify in a proper manner" because he carried no identification. R.21, Ex.A at 2.

Trooper Hornbrook approached Fairley, issued *Miranda* warnings, and stated that he had reason to believe, based on the location of the handgun and the bags, that she was concealing narcotics on her person. He further warned her that a female officer would meet them at the scene and would search her. Fairley produced two bags containing marijuana from her sock and Trooper Hornbrook arrested her. Mr. Martin and Fairley were transported to the Gibson County Jail, leaving the children under the supervision of Trooper Douglas Humphrey while awaiting a child welfare representative to assume their care. Trooper Humphrey noted an object in the eighteen-month-old's diaper that appeared to be "other than normal diaper usage." R.21, Ex.A at 3. He checked the diaper and found a plastic bag containing approximately 140 grams of crack cocaine.

## B.  District Court Proceedings

Mr. Martin moved to suppress all evidence obtained as a result of what he argued was an illegal detention. In a motion that includes detailed factual allegations that track the investigative reports of Troopers Wood and Hornbrook and Deputy Dewig, all of which Mr. Martin appended to his motion, Mr. Martin claimed that the troopers unreasonably prolonged the length of the traffic stop in violation of the Fourth Amendment and, as a consequence, searched the car unlawfully. The State, noting in its written response that the

"facts of the present matter do not appear to be in dispute," R.24 at 1, argued that the encounter was lawful. *See United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc). The district court, after reviewing the parties' written submissions, denied Mr. Martin's motion without conducting an evidentiary hearing. The court reasoned that the traffic stop was not unreasonable in duration given Mr. Martin's inability to produce a driver's license, his disclosure that he was not even authorized to drive the rental car and his suspicious answers to Trooper Wood's questions.

## II

## DISCUSSION

### A.  Standard of Review

We review questions of law de novo and findings of fact for clear error when reviewing the denial of a suppression motion.[4] *See United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005).

---

[4]  Mr. Martin was sentenced on September 7, 2004—after this court's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), but before the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Mr. Martin appeals only the denial of his suppression motion and does not challenge his sentence. Indeed, the district court sentenced him based on its discretion under the statute, consistent with *Booker*, and noted that Mr. Martin received a "pretty significant break" because his sentence under the federal sentencing guidelines would have been significantly higher. R.59 at 29. We shall not address Mr. Martin's sentence. *See United States v. Muriel*, ___ F.3d ___, 2005 WL 1903739, at *2 n.1 (7th Cir. 2005).

## B. Fourth Amendment Challenge

Mr. Martin first argues that Trooper Wood unreasonably prolonged the traffic stop in violation of the Fourth Amendment. He concedes that he was validly detained for speeding but contends that his rights were violated when he was held for "over an hour" while Trooper Wood followed his "hunch" that Mr. Martin's vague and conflicting answers signaled that criminal activity was afoot. Mr. Martin contends that Trooper Wood had all the information required to issue a speeding ticket as soon as he verified that Mr. Martin possessed a valid Illinois driver's license. In his view, this stop was longer than reasonably necessary to enforce the traffic laws. The State responds that Trooper Wood's questions were routine and did not unreasonably prolong the stop and that, as suspicion developed against Mr. Martin, it became reasonable to consult Trooper Hornbrook and call in the canine unit.

Mr. Martin was arrested based on probable cause that he was speeding. *United States v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004); *see also Whren v. United States*, 517 U.S. 806 (1996). While he was in custody, it was not improper for police to question him so long as the nature and duration of the stop remained reasonable. *Childs*, 277 F.3d at 952. A traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed. *Id.* at 953-54. A seizure that is justified only by the need to issue a traffic ticket "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 125 S. Ct. 834, 837 (2005). However, information lawfully obtained during that period may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable

investigation. *See United States v. Muriel*, ___ F.3d ___, 2005 WL 1903739, at *4 (7th Cir. 2005); *United States v. Brigham*, 382 F.3d 500, 507-08 (5th Cir. 2004) (en banc); *United States v. Garrido-Santana*, 360 F.3d 565, 575 (6th Cir. 2004). In addition, the use of a drug-sniffing dog during an otherwise lawful traffic stop does not implicate a defendant's legitimate privacy interests. *Caballes*, 125 S. Ct. at 836-37.

Here, failure to produce a valid driver's license necessitated additional questioning while the trooper ascertained whether or not Mr. Martin was a licensed driver. While questioning Mr. Martin about his driver's license, Trooper Wood learned that the car was rented but that Mr. Martin did not possess the rental agreement. The questions were routine and part of a reasonable law-enforcement inquiry under the circumstances. The information supplied by Mr. Martin necessitated additional investigation and justified a lengthier stop to determine whether Mr. Martin was licensed and whether the vehicle was rented. While conducting his investigation, Trooper Wood received conflicting statements about Mr. Martin's origin and destination. The inconsistencies justified calling Trooper Hornbrook for backup and requesting a criminal check on Mr. Martin, an investigative step that revealed several prior arrests on various charges. Before Trooper Wood completed his reasonable investigation, Trooper Hornbrook arrived and informed Trooper Wood that Mr. Martin's name had surfaced in intelligence reports concerning drug trafficking between Chicago and Vincennes. Additionally, Fairley offered vague and evasive answers when questioned by Trooper Hornbrook, and Trooper Wood verified that Mr. Martin was not authorized to drive the vehicle.

In light of the developing information, it was not unreasonable for Trooper Wood to suspect that Mr. Martin was trafficking narcotics. Nor was it unreasonable to detain Mr.

Martin long enough for the canine unit to arrive and confirm or deny the troopers' suspicions. *See United States v. Rogers*, 387 F.3d 925, 934 n.9 (7th Cir. 2004). The drug-sniffing investigation began approximately twenty minutes after Deputy Dewig and the drug detection dog were summoned. Given the early time of morning, we cannot say that the officers' response time made the stop unreasonable. There was no unreasonable delay waiting for backup and the canine unit. At each stage of the investigation, the additional information obtained justified additional investigation. Once the drug dog alerted to the presence of drugs, the trooper had probable cause to search the car. *See id.*

## C. Evidentiary Hearing

Mr. Martin also submits that the district court should have held an evidentiary hearing before ruling on his suppression motion. He asserts that there are disputed issues of material fact that would have affected the outcome. Evidentiary hearings are necessary only when the party requesting the hearing identifies a significant, disputed factual issue that must be resolved. *See United States v. Wilson*, 169 F.3d 418, 426 (7th Cir. 1999). In this case, the parties agreed to all the relevant facts. Mr. Martin does not contend otherwise but instead argues that, had he been able to cross-examine Trooper Wood regarding the lack of a continuous audio track during the videotaped roadside detention, he would have been able to identify facts necessary for the district court to rule on the suppression motion. But an evidentiary hearing is only required when the defendant specifically has alleged a definite disputed factual issue. *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004). Mr. Martin still has not explained what information he expected to develop. Indeed, when the State responded to his motion by arguing that no evidentiary hearing was necessary because no

material facts were in dispute, Mr. Martin did not reply. Even now, after Trooper Wood testified at trial, Mr. Martin does not say what else could have been developed at an evidentiary hearing. The district court properly determined that Mr. Martin did not "raise any disputed factual issues on which the resolution of this motion depends." R.37 at 4; *see Villegas*, 388 F.3d at 324.

## Conclusion

For the foregoing reasons, we affirm the denial of Mr. Martin's motion to suppress evidence seized during the traffic stop and conclude that an evidentiary hearing was unnecessary. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*