NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2010
Decided November 4, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-4157

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. |
| *v.* | No. 3:08CR00033-002 |
| CHRISTOPHER AGUILAR, *Defendant-Appellant*. | Richard L. Young, *Chief Judge*. |

**O R D E R**

Christopher Aguilar appeals the district court's denial of his motion to suppress evidence found in his car during a warrantless search. He argues that the government did not submit any evidence to support the facts upon which the police relied to find probable cause for the search. Because Aguilar never contested many of the asserted facts, the government was not required to furnish evidence of them, and the district court properly found probable cause based on the undisputed facts. Thus we affirm the judgment.

According to the government, in 2006 Aguilar formed a methamphetamine distribution conspiracy with his co-defendant James Braden. After Braden began

cooperating with law enforcement, he provided a statement implicating himself and Aguilar in the conspiracy. Then, with Braden's help the Drug Enforcement Administration("DEA") recorded a series of telephone calls between Aguilar and Braden in which the two planned a methamphetamine purchase and delivery in Evansville, Indiana, in October 2008. It also observed Braden's cash payments to Aguilar, which were made with DEA money. Having monitored and recorded Aguilar's planned delivery of methamphetamine to Braden in Indiana, law enforcement located Aguilar on the way to Evansville on October 11, 2008; once he was inside the city, an Evansville Police Department officer stopped him at the DEA's direction. The officer also observed Aguilar speeding just before the stop. A drug detection dog brought to the scene alerted to drugs at Aguilar's rental car.

The officers conducted a warrantless search of the trunk and found 371 grams of methamphetamine concealed in false can containers. In the passenger compartment, they located a cell phone used to make calls to Braden. Aguilar also had some of the DEA purchase money with him. A grand jury indicted Aguilar with one count of conspiracy to possess with intent to distribute methamphetamine and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii).

Aguilar moved to suppress the evidence seized from the car. He argued that the search violated his rights because it did not fall within any exceptions to the Fourth Amendment's warrant requirement. Aguilar also requested an evidentiary hearing on the motion. The government, in response, argued that Braden's cooperation, the controlled deliveries, and the phone calls recording the planned delivery provided ample probable cause to search Aguilar's car in Evansville. Alternatively, the officer had an independent basis for probable cause based on the police dog alert after stopping Aguilar for speeding. The government denied the need for an evidentiary hearing because Aguilar raised "no material dispute concerning the underlying facts of the investigation, as outlined herein and in the defendant's motion . . . the relevant facts are un-controverted." Aguilar did not disagree with that assertion in a reply brief.

At the suppression hearing, the parties discussed the nature of any fact dispute. Barbara Williams, Aguilar's appointed attorney, explained that Aguilar did dispute that he was speeding and the dog's reliability:

> MS. WILLIAMS: Mr. Aguilar does dispute some of the facts that are alleged in the government's response with respect to the circumstances of this matter. We believe that the stop was initially without probable cause. Mr. Aguilar questions the reliability of the police officers' contention that he was speeding. He indicates that he believes he was not speeding and that that was a pretextual stop and that because of that, there was not probable cause

to conduct a search. With respect to the fact that there was a canine at the scene, as Mr. Brookman indicated, ran around the door, we believe that the Court's finding that that is sufficient when the dog alerted or finding that that would be highly reliable would be inappropriate in this case because we believe that the testimony of the officers will be rebutted and that there will be evidence that the dog was not well trained, had not received a certification in compliance with the national rules for canine training, had performed his duties in a haphazard way, and had given numerous false positives; in fact, we believe that the evidence would be that the canine's skills were very suspect . . . .

Williams urged the court to apply *Arizona v. Gant*, 129 S. Ct. 1710 (2009) (holding that a warrantless car search is constitutional only if the arrestee can still access the car or the police have reason to believe it contains evidence of a crime), to render the search unconstitutional. The district court reasoned, however, that even without the speeding and the police dog, the government had probable cause based solely on the recorded phone conversations with Braden:

THE COURT: But here there was reasonable belief that there would be drugs or contraband found in the vehicle, based upon the recorded phone conversations, so it seems to me that [*Gant*] wouldn't apply.
MS. WILLIAMS: Well, Your Honor, we would ask the Court to consider applying this case because the search was because of a speeding violation. And even though there were telephone conversations that were made before that, I don't believe that that would give the police officer who made the stop initially probable cause to stop the car for speeding.

The district court decided that "based upon the pleadings and the arguments of counsel," the government had probable cause to search Aguilar's car. It denied the motion to suppress on two alternative bases: The combination of the statement from Braden, the delivery of cash to Aguilar, and the recorded phone conversations "provided more than enough probable cause"; also, the police dog alert after the speeding stop "provided an independent basis for probable cause."

Aguilar then replaced his appointed attorney, and the district court allowed new counsel to supplement the suppression motion. Aguilar's amended motion to suppress raised three arguments. First, he maintained that reliance on Braden's cooperative statement to law enforcement was not sufficient: "[T]he information provided by James Braden, standing alone, did not provide cause to allow the stop of [Aguilar's] vehicle" because "there is no evidence that Braden had a previous track record with the officers." Within this argument, Aguilar inserts one sentence about the recorded phone calls, asserting

that in those calls "there is nothing but the corroboration of innocent travel plans" to visit a dying relative in Indiana. Second, he disputed the police dog's alert because the government had not shown the dog's reliability. Finally, Aguilar claimed that if the dog's alert was reliable, it still did not provide probable cause to search the car's trunk. After the government's response, the district court denied the amended motion, adopting its earlier reasoning.

Aguilar then entered a conditional guilty plea to one count of conspiracy to distribute methamphetamine. He retained his right to appeal the decision on the motion to suppress. Based on a criminal history category of VI and a total offense level of 34, Aguilar's guidelines range for imprisonment was 262 to 327 months. The district court sentenced him to 262 months' imprisonment, and Aguilar timely appealed.

On appeal Aguilar argues that a district court's finding of probable cause must be based on evidence, and the finding in this case was not. Since law enforcement did not have a warrant to search Aguilar's car, "the government must show by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009) (citing *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000)). But the burden is on the defendant to show the need for an evidentiary hearing, *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995), by disputing the facts at issue, *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005). A dispute exists "only 'when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)).

Aguilar maintains that he disputed key factual issues below in both motions, and thus, the government failed to establish probable cause because it did not offer evidence to substantiate the factual assertions in its brief. But the record tells a different story: At no time did Aguilar deny that his recorded phone calls with Braden described his planned drug deal and that Braden later delivered cash to Aguilar. Indeed, Aguilar's original suppression motion did not even mention Braden. And when the government asserted in its response to Aguilar's motion that the parties agreed to the relevant facts, Aguilar did not disagree in a reply. *Martin*, 422 F.3d at 603 ("when the State responded to his motion by arguing that no evidentiary hearing was necessary because no material facts were in dispute, Mr. Martin did not reply.").

Aguilar's first assertion of a fact dispute occurred at the suppression hearing itself, but even then he did not specifically dispute the contents of the recordings or delivery of cash. At the hearing, Aguilar's counsel urged: "Mr. Aguilar does dispute some of the facts

that are alleged in the government's response with respect to the circumstances of this matter. We believe that the stop in question was initially without probable cause." This assertion alone, however, did not identify a specific, definite, detailed factual dispute about the connection with Braden. *See Villegas*, 388 F.3d at 324. As the hearing continued, Williams identified a specific dispute, but limited it to Aguilar's driving speed and the police dog's reliability; she still never denied the existence or content of Aguilar's recorded telephone conversations with Braden, the information that Braden provided to the DEA, or the cash delivery. To the contrary, she said that "even *though* there were telephone conversations that were made before that, I don't believe that that would give the police officer who made the stop initially probable cause to stop the car for speeding." Essentially, she argued that even though the phone calls occurred, they were an insufficient basis for probable cause. This is an argument about the legal insignificance of the admitted communications, not a denial of them. Accordingly, Aguilar did not trigger the government's burden to produce evidence of the recorded communications.

Nor did Aguilar sufficiently dispute the asserted contents of the recordings between Braden and Aguilar agreeing to a drug deal in his amended motion to suppress. In referring to Braden, his amended motion principally attacked only the reliability of Braden's cooperative statement to the police, contending that because he had no proven "track record," his statement did not furnish probable cause. Buried within this challenge to Braden's reliability, Aguilar briefly mentioned, for the first time, the recorded phone calls, asserting only that they described "innocent" travel plans. It is possible that, broadly construed and taken in isolation, this sentence disputes that Braden and Aguilar discussed over the phone a plan to deliver illegal drugs. But this one unelaborated sentence was too vague and conclusory, to alert the government and the court to a genuine dispute about the recorded calls, *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

The district court could have asked the government to play the tapes of the phone conversations or put an officer on the stand to describe the cash delivery. But to require the government to prove facts that a defendant has not adequately called into dispute would needlessly divert attention away from genuinely disputed matters. Notably, even now Aguilar does not deny the government's description of a recorded plan for Aguilar to deliver drugs or the observed cash delivery. *See Martin*, 422 F.3d at 603 ("Even now, after Trooper Wood testified at trial, Mr. Martin does not say what else could have been developed at an evidentiary hearing."). Thus, Aguilar does not deny that, had there been an evidentiary hearing, the government would have produced telephone conversations depicting Aguilar's plan to sell methamphetamine and testimony detailing the execution of that plan with a cash delivery. Without that denial, or a denial that the recorded plan to

deliver drugs followed by a cash transaction creates probable cause, neither of which Aguilar makes, the conviction is sound.

Although Aguilar did not establish a need for a hearing on the recorded conversations, Aguilar arguably said enough in his motions to suppress to trigger the need for an evidentiary hearing on whether he was speeding and the police dog's reliability. But Aguilar does not deny that the contents of recorded calls, as the government describes them, and the cash delivery, furnish probable cause. Since Aguilar did not give the district court a sufficient reason to dispute the government's account of these facts, and he does not dispute them now, we can uphold the warrantless search based on those recorded calls. *Green v. CSX Transp., Inc.*, 414 F.3d 758, 765 (7th Cir. 2005) ("We may affirm the judgment based on any ground found in the record.").

Accordingly, we AFFIRM the judgment of the district court.