NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2014[*]
Decided November 10, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2464

| | |
|---|---|
| TERRENCE BUCHANAN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District |
| | of Wisconsin. |
| v. | |
| | No. 11-cv-238-wmc |
| KEITH KELLY, | |
| *Defendant-Appellee*. | **William M. Conley**, |
| | *Chief Judge*. |

**O R D E R**

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

Terrence Buchanan sued Keith Kelly under 42 U.S.C. § 1983 for an allegedly unlawful search and seizure during a traffic stop. The district court granted summary judgment in favor of defendant Kelly, finding that the undisputed facts showed that he was entitled to a defense of qualified immunity. Plaintiff Buchanan has appealed, arguing that factual disputes regarding the length of the traffic stop should have required denial of summary judgment. We affirm. We agree with the district court that the undisputed evidence shows that Kelly did not violate clearly established law.

Early one evening in March 2009, Buchanan was driving through Madison, Wisconsin. Kelly, a deputy sheriff on patrol that evening, noticed that the license-plate lamp on Buchanan's car was out. Kelly knew that an unilluminated plate violates Wisconsin law, see Wis. Stat. § 347.13(3), so he began following Buchanan. When Buchanan turned onto a side street, Kelly pulled Buchanan over for the traffic violation. The traffic stop ended up lasting around 40 minutes. During those 40 minutes, other observations led Kelly to search Buchanan and his car. He found marijuana and marijuana paraphernalia. Buchanan was later charged in state court for possession of marijuana with intent to deliver. Buchanan moved to suppress the drugs recovered during the traffic stop, arguing that its length and the search were not justified.

At the suppression hearing, Kelly and Buchanan testified about the stop. In the first few minutes of the encounter, Kelly asked Buchanan for his license and registration. Kelly testified that Buchanan's hands were shaking and that Buchanan was nervous, but
Buchanan denied this. Because we are reviewing a grant of summary judgment, we must give Buchanan the benefit of conflicts in the evidence and draw all reasonable inferences in his favor. E.g., *Wilson v. Cook County*, 742 F.3d 775, 779 (7th Cir. 2014). We assume that Buchanan did not shake and was not nervous. It is undisputed, though, that Kelly noticed that Buchanan's one passenger was seated directly behind him. This unusual seating arrangement reminded Kelly, a 15-year veteran of law enforcement, of drug transactions that he previously had witnessed where dealers tended to sit on the same side of the car to facilitate sales.

After reviewing Buchanan's papers, Kelly returned to his car to perform a routine check of police records. His suspicions were aroused further when he learned that Buchanan had a history of felony convictions, including a drug offense, and was currently on probation. Based on the combination of the suspicious

seating arrangement and Buchanan's criminal and drug history, Kelly called for backup to assist with a canine sniff of the car for drugs. After an unspecified time that Buchanan now argues may have been as long as 30 minutes, Kelly began the canine search. During the search, the dog's behavior changed while sniffing the driver's door. Although the dog did not give a final and definitive "alert" to signal the presence of drugs, the dog's behavior indicated to Kelly that they might be nearby. Kelly also was aware that before the dog sniff started, Buchanan had been smoking a cigarette. Kelly recognized that cigarette smoking was sometimes used to mask the scent of illegal drugs.

After these developments, Kelly asked Buchanan to leave the car for a pat-down. As Buchanan left his car, he carried his jacket and dropped it to the ground rather than wear it, even though the temperature was near freezing. During the pat-down, Kelly discovered a marijuana pipe on Buchanan. Kelly then picked up Buchanan's discarded jacket and located bags of marijuana and a scale inside it. He arrested Buchanan and searched the vehicle. Inside the car he found a rolled marijuana cigarette.

In the criminal case, the state court granted Buchanan's motion to suppress the drugs found during the stop. The suppression ruling led to dismissal of all charges. Buchanan then sued Kelly, primarily under 42 U.S.C. § 1983, alleging that the traffic stop and search violated the Fourth Amendment because they were not supported by probable cause. The district court granted summary judgment to Kelly, concluding that the undisputed evidence established that his actions at each stage of the traffic stop were shielded by qualified immunity. The court also denied Buchanan's request to amend his complaint to assert a claim for racial discrimination under 42 U.S.C. § 1981.

On appeal Buchanan disputes the ruling on qualified immunity. He does not challenge the legality of the initial stop but maintains that Kelly violated his clearly established rights by prolonging it without justification. Buchanan relies on the well- established principle that even if a traffic stop is lawful at its inception, it may become an unreasonable seizure if it is prolonged beyond the time reasonably required to complete its purpose. See *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc). But under the Fourth Amendment, information suggesting possible criminal activity that an officer lawfully discovers during a valid traffic stop can justify lengthening the stop in order to conduct a reasonable investigation. See *United States v. Figueroa-Espana*, 511 F.3d

696, 702 (7th Cir. 2007); *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005). Furthermore, even if an officer mistakenly believes that a crime may have been committed, the officer does not, by extending a stop, violate clearly established law so long as the officer had reasonable grounds for prolonging the stop to investigate. See *Valence v. Wisel*, 110 F.3d 1269, 1276–77 (7th Cir. 1997); *Courtney v. Oklahoma ex rel. Dep't of Public Safety*, 722 F.3d 1216, 1225 (10th Cir. 2013).

We agree with the district court that the undisputed facts show that at each stage of the stop, Kelly did not violate clearly established law. He is entitled to qualified immunity. We begin with the first part of the detention after Kelly noticed the plate- illumination violation, when he asked for identification papers and conducted a police- records check. Buchanan does not contest that this portion was brief, and we conclude that it was justified. During this portion of the stop, Kelly observed the odd location of Buchanan's passenger. Buchanan does not dispute that the seating arrangement was consistent with drug sales. Kelly's knowledge of the plate-illumination offense and the suspicious seating entitled him to continue the detention for the brief background check. See *United States v. Finke*, 85 F.3d 1275, 1279–80 (7th Cir. 1996); *United States v. Jones*, 269 F.3d 919, 924–25 (8th Cir. 2001). The check revealed Buchanan's drug and felony convictions, adding to the suspicious circumstances.

Because this initial part of the detention was valid, Kelly could lawfully extend it to deploy a dog to sniff for drugs, at least where the dog was already on the scene and only minimal delay was involved. See *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). In *Caballes*, the Court held that a canine sniff during a lawful traffic stop does not violate the Fourth Amendment, even if the officer conducting the search has no reasonable suspicion of drug activity. 543 U.S. at 407. The canine search here is even more justified than in *Caballes* because Kelly had reason to suspect possible drug activity. He knew about Buchanan's drug-trafficking history, and he saw the positions of the car's occupants, which suggested drug dealing.

Buchanan responds that the time between the records check and the start of the canine sniff was too long for a routine traffic stop. Although he gave no testimony about the number of minutes that passed between the records check and the start of the dog sniff, he contends that the record permits an inference that 30 minutes elapsed. That inference is at best at the outer bounds of reasonableness, but even if we assume the delay lasted 30 minutes, that delay did not violate clearly established law.

After the records check, the traffic stop was no longer routine. By that time, Deputy Kelly knew the following: Buchanan had a criminal and drug-offense history; he was currently on probation; he had seated his one passenger in a way that could facilitate a drug deal; and he had been smoking, possibly masking a drug odor. This combination of circumstances gave Kelly reason to call for backup, reasonably delaying the stop to ensure officer safety, before starting the canine sniff. See *Finke*, 85 F.3d at 1280 ("The results of a criminal history check could indicate whether further back-up or other safety precautions were necessary."). We have previously rejected on the merits a Fourth Amendment claim based on a 20-minute delay before the onset of a canine search, where the officer had reasonable suspicion of drug activity. See *Martin*, 422 F.3d at 602. No decision of this court rejects as clearly unreasonable a delay that is only a few minutes longer. At a minimum, therefore, defendant Kelly is entitled to qualified immunity for the delay involved in this part of the detention.

That brings us to the final portion of the traffic stop that Buchanan challenges. After the dog sniff, Kelly ordered Buchanan out of the car and then frisked him and searched the car. Taking this step-by-step, Kelly was entitled to order Buchanan out of the car. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). Buchanan then added to Kelly's suspicions when he stepped out of the car and, in freezing weather, dropped his jacket on the ground, suggesting an effort to separate himself from the jacket and its contents. At that point, both the dog's and Buchanan's behaviors, plus Kelly's earlier observations, gave him further reason to believe that Buchanan possessed illegal drugs, and we do not think the pat-down violated his clearly established rights. See, e.g., *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) ("a person stopped on reasonable suspicion may be patted down but not searched"), citing *United States v. Edwards*, 415 U.S. 800 (1974); cf. *United States v. Tinnie*, 629 F.3d 749, 751–52 (7th Cir. 2011) (pat-down permitted where officer had reasonable suspicion that driver or passengers may be armed and dangerous); *id*. at 756–61 (Hamilton, J., dissenting) (frisk not justified in traffic stop where there was no reason to suspect driver or passenger of violent crime or drug crime).

The pat-down turned up a marijuana pipe, adding to the suspicion and leading Kelly to search Buchanan's jacket, which was lying on the ground. There was marijuana in the jacket, and that point, Kelly had probable cause to arrest Buchanan. See *Maryland v. Pringle*, 540 U.S. 366, 372–73 (2003). Under the law applicable in March 2009, this probable cause also allowed Kelly to conduct the warrantless search of the car. See *Wyoming v. Houghton*, 526 U.S. 295, 300–01 (1999); *New York v. Belton*,

453 U.S. 454, 460–61 (1981), overruled by *Arizona v. Gant*, 556 U.S. 332 (April 21, 2009). In fact, under the law at the time of the traffic stop, the dog's change in behavior *alone* justified the search of the car. See *Martin*, 422 F.3d at 602; *United States v. Limares*, 269 F.3d 794, 797–98 (7th Cir. 2001); *United States v. Thomas*, 87 F.3d 909, 912 (7th Cir. 1996). Thus, at each stage of the detention, Kelly's actions did not violate Buchanan's clearly established constitutional rights. Kelly is entitled to qualified immunity.

Buchanan also challenges the dismissal of his proposed claim that the detention was racially motivated and violated equal protection. He invokes 42 U.S.C. § 1981, but that statute protects the equal right of persons only to make and enforce contracts, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006), and no contracts are at issue in this case. Even under the Equal Protection Clause of the Fourteenth Amendment, the proposed claim is deficient. Buchanan proposes to allege that the stop was not supported by probable cause, but he refutes his own allegation by conceding that he violated Wisconsin law by driving without an illuminated license plate. He also alleges statistics purportedly showing that young, black males are pulled over by police at rates disproportionate to their share of the population. He argues that these statistics demonstrate that he was "obviously singled out … because of race." But general statistics alone do not plausibly suggest that Kelly himself acted with racially discriminatory intent in this particular case. See *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012); *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Accordingly, the district court did not err by screening and rejecting the proposed claim.

AFFIRMED.