**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2019
Decided October 15, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3285

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 16-30068-001 |
| KEITH J.D. OFFORD, *Defendant-Appellee*. | Sue E. Myerscough, *Judge*. |

**O R D E R**

Shortly after he was pulled over for speeding, Keith Offord was arrested for identity fraud. Before trial, Offord moved to suppress all evidence from the traffic stop, arguing that the state trooper violated the Fourth Amendment by prolonging the stop to await a drug-sniffing dog without reasonable suspicion that drug-related criminal activity was afoot. The district court denied Offord's motion. Because the use of the drug dog did not unreasonably prolong the stop, we affirm the district court's judgment.

## I.  Background

Around midnight on August 20, 2015, Offord was driving a rental car north on Interstate 55 from St. Louis to Chicago with his passenger, Constance Howay. Illinois

State Trooper Christopher Parmley clocked Offord's speed at 15 miles per hour over the posted speed limit and initiated a traffic stop, activating a dashboard camera that recorded audio and visual footage of the encounter.

Once Offord pulled over, Parmley approached the car and told Offord he had stopped him for speeding. Parmley asked where they were coming from and noted a large amount of merchandise in the backseat. Offord told Parmley that they had been in St. Louis, and that they were "in and out."

Parmley then requested identification from the car's occupants. Offord provided a valid driver's license and a car rental agreement in his name, but Howay had no identification, so Parmley requested that she follow him to his squad car, where he entered her identifying information into his computer. While the computer processed Howay's information, Parmley asked about her relationship with Offord and their trip to St. Louis. The check returned an outstanding warrant for Howay for failure to appear in court following an arrest for possession of a controlled substance or paraphernalia. Parmley continued to question Howay while he performed a check on Offord, which revealed that he had a prior arrest for a "weapon offense" and a conviction for "fraud/theft."

For the next two minutes, Parmley questioned Howay about her arrest warrant. He also radioed for a canine unit. Howay contested the validity of the warrant, insisting she had an upcoming court date and had paid a fine in relation to her controlled substance arrest. Parmley radioed her information to the dispatcher, who informed him that the warrant was valid, and that Howay was "wanted, armed, and dangerous." The dispatcher also confirmed that Parmley was within the geographic bounds of the warrant and broadcasted an alert to officers in the area to provide backup. Parmley and Howay exited the squad car; he then placed Howay in handcuffs, patted her down, and put her back in the squad car.

Parmley returned to Offord (who was still in the rental car), spoke with him about Howay's arrest, and told him to "hang out" until Parmley knew whether he could release Howay on bond. Then, responding to the alert by dispatch, Trooper Jefferson arrived as backup, and Parmley briefed him on the situation. One minute later, the drug dog arrived with its handler, Officer Cleveland. Parmley began writing Offord's speeding ticket.

At Parmley's request, Jefferson removed Offord from the car and had him close the windows for the drug-sniff test. Parmley then asked Offord to confirm his address so he could complete the speeding ticket. Parmley summarized the situation to Cleveland, and, while the dog conducted a sniff test, Parmley finished writing the

ticket. Thirteen minutes after Offord came to a stop, the dog alerted to the presence of drugs in the car.

A later search of the vehicle uncovered heroin residue in Howay's purse and evidence of identity fraud—$30,000 worth of new clothing, smartphones, watches, and gift cards, alongside receipts with customer names different from Offord's and Howay's. Offord was arrested for identity theft.

Before trial, Offord moved to suppress all evidence from the traffic stop, arguing that, without reasonable suspicion of drug activity, Parmley prolonged the stop beyond the time necessary to issue a speeding ticket. After a hearing, the district court denied the motion, concluding that Parmley did not unreasonably prolong the stop. The court found that Offord had been lawfully seized and that, given Howay's outstanding warrant, Parmley was reasonably efficient in his investigation. A jury later found Offord guilty of bank fraud and three counts of aggravated identity theft. He was sentenced to 144 months in prison.

## II. Analysis

On appeal, Offord argues that the evidence obtained from the traffic stop should have been suppressed because Parmley unconstitutionally prolonged the stop to wait for a drug-sniffing dog to arrive without any reasonable suspicion of criminal drug activity by Offord. This court reviews the district court's factual findings for clear error and questions of law de novo. *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018).

Offord argues that the traffic stop was prolonged beyond the time necessary to issue a speeding ticket. A dog sniff during a lawful stop does not violate the Fourth Amendment, even without reasonable suspicion of drugs, unless the sniff prolongs the stop beyond the time reasonably necessary to accomplish the purpose of the stop. *United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019) (citing *Illinois v. Caballes*, 543 U.S. 405, 410 (2005); *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015)). But, "[b]ecause traffic stops are 'especially fraught with danger to police officers,' an officer may also take 'certain negligibly burdensome precautions in order to complete his mission safely.'" *United States v. Stewart*, 902 F.3d 664, 672 (7th Cir. 2018) (quoting *Rodriguez*, 135 S. Ct. at 1616). An officer may demand identification and information from passengers and can order passengers to get out of the car during the stop. *See United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005).

Given the circumstances, Parmley was efficient and diligent in his investigation of Offord's speeding violation and Howay's outstanding warrant, and thus he did not unreasonably prolong the stop. During the first few minutes of the encounter, Parmley took actions ordinary to a traffic stop. He told Offord he had been pulled over for speeding, asked about where Offord and Howay were coming from, requested identification and the car-rental agreement, and brought Howay back to his squad car to run her information when she failed to produce any identification. *See Rodriguez*, 135 S. Ct. at 1615; *see also United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002).

The revelation of Howay's outstanding arrest warrant and the dispatcher's warning that she might be "armed and dangerous" transformed the encounter from a routine traffic stop into one that necessitated additional investigation. A passenger of a stopped vehicle is "subject to the [officer's] control and direction until" officers can assure their own safety. *Childs*, 277 F.3d at 949. Parmley spent the next seven minutes investigating the warrant, checking Offord's identification and criminal history, and arresting Howay, actions permissibly within the scope of the traffic stop. *See United States v. Sanford*, 806 F.3d 954, 956 (7th Cir. 2015); *see also United States v. Martin*, 422 F. 3d 597, 602 (7th Cir. 2005). Offord contends that Parmley impermissibly lengthened the stop by asking Howay questions unrelated to the speeding violation. But an officer may make unrelated inquiries to occupants of a lawfully seized vehicle so long as they do not prolong the stop. *United States v. Walton*, 827 F.3d 682, 687 (7th Cir. 2016) (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Parmley acted prudently, asking questions while he performed criminal checks and looked up Offord's driver's license.

Offord argues that, even if everything Parmley did up until the point he arrested Howay was permissible, Parmley impermissibly lengthened the stop after Howay's arrest—when she no longer presented a danger to officer safety. Offord contends that Parmley's direction to "hang out" after Parmley informed him of Howay's warrant proves the stop was needlessly prolonged. Instead, Offord argues, Parmley should have immediately given Offord a speeding citation and sent him on his way. But Offord's attempt to parse the timeline in such a way is unpersuasive, and we decline to dictate the order in which a police officer must conduct tasks incident to a traffic stop. In the four minutes that passed from Howay's arrest to the drug dog alert, Parmley did not expand the scope of the stop. Parmley had not yet worked on the speeding citation because he had just processed Howay's outstanding arrest warrant, and Trooper Jefferson had arrived on scene and required briefing. Once Parmley briefed Jefferson, Cleveland arrived with the drug dog and Parmley updated him. While the other officers conducted the sniff test, Parmley obtained Offord's current address to complete

the speeding ticket. The sniff test lasted 14 seconds and was over before Parmley gave the ticket to Offord—this all happened within minutes of Howay's arrest.

Because we have concluded that the traffic stop was not unreasonably prolonged, it is unnecessary to decide whether Parmley independently had reason to suspect drug activity and order the canine sniff.

We AFFIRM the district court's judgment.